**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

**David P. Esposito**
**Plaintiff**

**Vs.** **C.A. # 04-302S**

**Town of North Providence, by and Through its Finance Director, Robert DiStefano & its agents, Mayor A. Ralph Mollis, John Fleming, Ernest C. Spaziano, G. Richard Fossa, William V. Devine, Joseph DiCenzo Leo J. Perrotta, William Abbatemateo**

**PLAINTIFF'S OBJECTION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Now comes the Plaintiff and hereby objects to Defendants Motion for Summary Judgment.

In support thereof, Plaintiff has attached a memorandum of law.

PLAINTIFF,
By His Attorney

Joseph P. Casale, Esquire #3653
438 East Main Road
Middletown, RI 02842
401-841-0004
401-841-0016
Aquidnecklegal@aol.com

CERTIFICATION

I certify that on the 2 day of ~~October,~~ Dec 2005 I caused to be mailed a copy of the above to Attorney Marc DeSisto, 211 Angell Street, P.O. Box 2563, Providence, RI 02906

**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

**David P. Esposito**
**Plaintiff**

**Vs.** **C.A. 04-302 S**

**Town of North Providence, by and through its Finance Director, Robert DiStefano & its agents, Mayor A. Ralph Mollis, John Fleming, Ernest C. Spaziano, G. Richard Fossa, William V. Devine, Joseph DiCenzo Leo J. Perrotta, William Abbatemateo**
**Defendants**

# PLAINTIFF'S MEMORANDUM OF LAW

## I. INTRODUCTION

This matter involves Plaintiff's allegations of a fourteen year effort by the Defendant Town of North Providence and the named Defendants in forcing Plaintiff from his job as the Town of North Providence's Crime Prevention Officer. Plaintiff has filed this matter before the Court alleging violations of due process, the Americans with Disabilities Act (ADA) and intentional infliction of emotional distress. The Defendants have responded by filing a Motion for Summary Judgment arguing that Plaintiff's claims were either barred by the Statute of Limitations or failed to state a claim upon which relief may be granted under the due process clause, the ADA or Rhode Island Tort Law.

Plaintiff respectfully suggests that Defendants' Motion should be denied.

## II. FACTS

Because of the complicated issues in this matter, a comprehensive review of the facts of this case are necessary.

David P. Esposito, the Plaintiff, has been an employee of the Defendant, Town of North Providence since the 1980s.

In 1991, the Plaintiff, responded to a job posting of the Defendant Town for the position of Crime Prevention Officer (CPO) in the North Providence Police Department. This 1991 Job posting for CPO contained specific requirements for this position along with the existence of a complete written job description.

Prior to the Plaintiff's application for said position, the Defendant Town, in violation of Union contracts appointed a Police Officer as the CPO.

The Union local 1033 grieved the matter in February 1990 and the Roberta Golick Arbitration Award was issued on December 17, 1990 and the Local 1033 Union confirmed the Award in RI Superior Court on February 19, 1991. The arbitration award, confirmed by the Superior Court stated that "... the Town was not free from its contractual bargain with the Union...by conferring special police status on a civilian Crime Prevention Officer, no statutory impediment was shown to prevent the Town from doing so."

The Defendant Town was found in violation of the Contract and was ordered to post and fill the position within 30 days if efforts to resolve the matter were not successful.

In an attempt to circumvent the Arbitration Award, the Defendant Town then notified the Local 1033 Union it was abolishing the position of CPO on February 25, 1991.

After a Superior Court hearing in April 1991, the Defendant, Town was found in Contempt by the Superior Court.

Plaintiff was the candidate who successfully completed and passed the tests for the CPO position. However, Defendant DiCenzo, Police Chief of the North Providence Police Department at that time refused to appoint Plaintiff to the position of Crime Prevention Officer.

The Local 1033 Union then filed a grievance, and around and about May of 1993 a new Arbitrator awarded the position to the Plaintiff and referred to the prior 1990 Award. The job description for the CPO was also made part of this Decision.

After this Arbitration Award, the then Mayor Mancini promoted the Plaintiff, from Community Development Director to the Crime Prevention Officer position to start work on June 21,1993 in the North Providence Police Department.

Instead of allowing the Plaintiff to perform his duties, Defendant DiCenzo placed the Plaintiff, at a desk in an Executive Support room in a corner and began monitoring every move Plaintiff made. Defendant DiCenzo forbade Plaintiff from talking to anyone for more than 60 seconds and Plaintiff was informed that he would have to walk down a particular corridor to come and go from the building. No other employee of the Defendant town was subjected to this scrutiny.

Plaintiff made several attempts to rectify this treatment, and as of July 1994 the abusive treatment continued with further unilateral changes in the job description whereby Plaintiff Esposito was not doing his job description but relegated to clerk work.

Plaintiff attempted to inform Defendant Town Officials of this treatment. Its Supervisor's were aware of this situation but continued to act as if the Plaintiff was to be monitored and given clerical work.

In 1994 the Plaintiff then presented his first formal written grievance relative to the treatment he was receiving.

After five years of hearings on this matter, an arbitration decision finding the Defendant Town in violation as follows: Intentional Violation of (3) three prior arbitration awards, Intentional Violation of the CBA/Contract, (BAD FAITH), Violation of due process rights at the Arbitration Hearing, along with a cease and desist order. (Also, as grievant, the Plaintiff, David P. Esposito, was awarded "make whole remedy of $30, 000.00 plus 12% interest as of November 21, 1999"). (This entire matter was deemed a continued violation by the Defendant Town.)

The Defendant Town continued the fight and appealed this 1999 decision and award in a Motion to Vacate to the Rhode Island Superior Court. This matter has been pending before that Court since 1999. Legal briefs have been filed on behalf of the Defendant Town and Plaintiff.

Beginning in 1993 the Plaintiff was relegated to the cellar of the police department, where the Plaintiff suffered physical and psychological health problems. The Plaintiff, Esposit,o was taken out of work by a Doctor (MD ENT Specialist) when Doctor's letters were ignored by Defendant Town. Another Doctor (MD) also took Plaintiff out for medical reasons relating to the job and the conditions that the Defendant Town forced the Defendant to work in from 3/96-9/98 (Workers Comp.).

In 1998 as a result of an agreement reached in the Worker's Compensation Court, the Plaintiff returned to work

However the harassment and disparaging treatment did not stop and once again the Plaintiff was taken out of work from 3/99 to 3/2001.

The Plaintiff, David P. Esposito returned again in 2001 and even contrary to Doctor's reports and Arbitration Award(s) he received the same treatment, as well as being the proper

duties as delineated in the job description and Awards.

On or about April 1, 2002, the Plaintiff, filed another grievance citing: non-implementation of the Arbitration Award(s); continued relegation to clerical work that kept him confined to an overheated (90 degree temperatures) records office for 7 hours each day making copies as needed; no proper duties; and no adequate workplace. All of this exacerbated Plaintiff's medical condition, a condition that was known to the Defendant Town.

In August 2002, since the April 2002 grievance was never resolved between the Local 1033 and the Defendant Town, the Plaintiff's work location was now changed from the cellar in the police department headquarters to a damp, moldy over 100-year-old historic fire station in the Defendant Town that had been converted to a Division Of Inspections office. The Plaintiff was informed that this change was to be temporary and the Plaintiff was promised to get the CPO job description implemented while he wrote certain Police Grants and cleaned up the mess that the Grant situation was in.

In reliance upon the promises of the Defendants, the Plaintiff, in good faith, did in fact clean up the Grant mess and brought to the Defendant Town over $ 250,000.00 for the police department. However, the Defendant Town and various named Defendants reneged upon their promise and continued to not provide proper duties nor did it provide the proper tools or identification required for a Crime Prevention Officer according to Arbitration Awards and conduct of the parties.

Once again the Defendant Town exiled the Plaintiff by taking away his vehicle for no legitimate business reason and giving it to another. In addition they relegated the CPO to clerical work for another department within the Defendant Town.

In August 2002, the Town continued to confine the Plaintiff to an office space for 7 hours a

day with no proper duties from the existing job description and the damp, moldy, musty and dusty work place that was continually exacerbating the Plaintiff's medical condition.

One example of the disparaging treatment done to the Plaintiff, but not to any other employee, is that the Plaintiff is required to punch in at the police station building and then report to his work area several blocks away, being docked if late. A further example is the fact that Defendant Spaziano, for no legitimate business reason, took away one half of the Plaintiff's lunch hour.

In 2003, the Defendant Town, through its Chief of Staff, sent a memorandum to the Plaintiff, unilaterally changing the Plaintiff's title to (no title) and moving the Plaintiff to Division of Inspections, stating, that the Plaintiff will not be getting any assignments from the police department.

The Plaintiff, after expressing that this was a violation of his rights and that he was not being allowed to perform his job pursuant to the Arbitration Awards and Contract was suspended for 10 days without pay.

In March of 2004, the Defendant Town, through the Defendant Police Chief Spaziano, suspended the Plaintiff for expressing his rights relative to his working conditions.

Plaintiff then filed a Pro-Se complaint in July 2004. In November 2004, Plaintiff, retained counsel who amended the complaint to a Verified Complaint and served the Defendants.

Defendants now bring this Motion for Summary Judgment before the Court.

## III. STANDARD OF REVIEW:

Summary judgment is appropriate only if the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "In this regard, 'material' means that a contested fact has the potential to change the outcome of the suit under the governing law if the dispute over it is resolved favorably to the nonmovant.... By like token, 'genuine' means that 'the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party....' " **McCarthy v. Northwest Airlines, Inc., 56 F.3d 313, 315 (1st Cir.1995)** (citations omitted). The party moving for summary judgment must demonstrate an absence of evidence to support the nonmoving party's case. **Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).**
In determining whether this burden is met, the court must view the record in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences in its favor. **Cadle Co. v. Hayes, 116 F.3d 957, 959 (1st Cir.1997)**. Once the moving party has made a preliminary showing that no genuine issue of material fact exists, "the nonmovant must contradict the showing by pointing to specific facts demonstrating that there is, indeed, a trialworthy issue." **National Amusements, Inc. v. Town of Dedham, 43 F.3d 731, 735 (1st Cir.1995)** (citing ***Celotex*, 477 U.S. at 324); Fed.R.Civ.P. 56(e)**. "This is especially true in respect to claims or issues on which the nonmovant bears the burden of proof." **International Ass'n of Machinists & Aerospace Workers v. Winship Green Nursing Ctr., 103 F.3d 196, (1st Cir.1996)**

## IV. ARGUMENT

**A. The Statute of Limitations, relative to the Majority of Plaintiff's Claims, are tolled.**

Plaintiff agrees that the Statute of Limitations in Rhode Island generally is three years for the type of violations alleged. Although Defendants correctly cite the prevailing law relative to the Statute of Limitations, the Defendants fail to address the crux of Plaintiff's Argument: that the statute of limitations does not begin to run until after the violations have concluded. Support for this position can be found in **Camacho-Cardona vs Pena, 360 F.Supp. 2d 298 (D. Puerto Rico 2005).** The Court held that the accrual period is a federal law question. **(id at 300).** The Court found that a tolling of the statute of limitations would occur if a Plaintiff established a continuing violation of his rights, i.e. discrimination. **(id at 300-301)** The Court quoting **Velazquez v Chardon, 736 F.2d 831, 833 (1st Cir. 1984)** held that a Plaintiff must demonstrate "that not only the injury, but the discrimination, is in fact ongoing." **(id)**

In the case at bar, Plaintiff, in his statement of facts, as well as deposition testimony, has outlined various specific acts of harassment, suspensions, non-assignment of duties, as well as the dates therein. The specificity, lacking in **Camacho-Cardona vs Pena**, is certainly found here. Not only has Plaintiff established acts as recent as 2003, he has been able, through his testimony to link them to the original acts of 1993. Accordingly, using the standards established for ruling on a summary judgment motion, this Court must deny the Defendants' Motion based upon the Statute of Limitations.

**B. Defendants are not Entitled to Summary Judgment for Violations of the ADA.**

**1. The Equitable Tolling Exception applies to this matter.**

In **Bonilla v Muebles, 194 F.3d 275 (1st Cir 1999)** the First Circuit did indeed state that a claimant must exhaust their administrative remedies relative to the ADA before filing suit. **(Id)** However, the Court did carve out an exception to this bright line rule. Although the Court did not find in **Bonilla** sufficient facts to warrant applying the equitable tolling of the charge filing requirement, Plaintiff suggests that such circumstances may be found in the case at bar.

Plaintiff stated in his deposition that there was an understanding that he would be moved to a better location and given better duties if he helped clean up the grant situation (see Plaintiff's depo generally p 61-62.) Further, the Plaintiff had been suspended twice for trying to assert his rights. The promise of better quarters, coupled with the threat of retaliation, certainly could rise to the level of equitable tolling that is discussed in **Bonilla**. Given the fact that the Plaintiff has given specific instances of reliance and fear of retaliation, this Court, must find that there is an existence of material facts in dispute that make the granting of summary judgment, premature.

**2. Plaintiff is disabled under the Americans with Disabilities Act**

Plaintiff has alleged, and Defendants have not denied that it has known of Plaintiff's severe allergies since 1987. Yet, in spite of the knowledge of these severe allergies, the Defendants have placed the Plaintiff in situations that are known to exacerbate his conditions. Defendants argue that the Plaintiff's condition does not amount to a disability protected under the ADA. Plaintiff would agree with the standards as set forth in **Toyota Motoring v Williams, 122 S.Ct. 681 (2002).**

However, Plaintiff argues that when one utilizes those criteria, and applies them to set the facts of the case at bar, there is a genuine issue of fact that requires a fact finder to decide. Defendants seem to minimize Plaintiff's condition by directing the Court to one page of his deposition testimony. However, a full more detailed account of how this condition affects the

Plaintiff can be found on pages 63-66. Further, produced to the Defendants, and attached hereto, is a memorandum written by the Plaintiff in November 2003 detailing how his condition, exacerbated by the intentional treatment of Defendants, affects his daily life. Clearly there is a dove-tailing of the affects of Plaintiff's condition as described by the Defendants and testified to by the Plaintiff. Clearly, Plaintiff's testimony, in the light most favorable to the Plaintiff, concludes that he is unable to go to sleep for hours due to the conditions that have been forced upon him. Further, he has experienced serious nosebleeds, and was unable to perform the activities that one would normally be able to enjoy, but for the conduct of the Defendants.

Further, this Court must remember that the facts of this matter are not as clear as in the line of cases cited by the Defendants. Plaintiff is arguing that the Defendants intentionally placed him in this position in an effort to force him to quit his position. The Defendants should not benefit from their intentional conduct. Certainly, the Plaintiff is prevented from working in several locations. However, it is the Defendants who have placed the Plaintiff in those situations. Pictures presented at Plaintiff's deposition reveal that when the Defendant Town moved him to the Department of Inspections and Standards, it placed him in a room where there was a bucket to hold the water leaking from the roof and how the rug was saturated with water.(see Depo at p61)

Clearly, there are facts in dispute that require that this Court deny the Defendants' Motion upon these grounds.

**C. Summary Judgment Regarding the 1983 Claims Should Also be Denied.**

Plaintiff agrees that **Depoutot v Raffaelly 424 F. 3d 112, 118 (2005)** did indeed establish the standard to be used in determining a Procedural Due Process Claim. First is the requirement that the Plaintiff prove that the Official's conduct shocked the conscience. (Id) The Court states

that negligent conduct is insufficient to shock the conscience. (Id at 119) The Court stated that these types of analyses are dependant on context and detail. In the case at bar, the Plaintiff has alleged that the Defendants, over the past 15 years, have conspired to oust him from his job. They have relegated him to unhealthy working conditions, suspended him, harassed him, allowed fellow employees to harass him, unilaterally changed his job descriptions, all with the motive of doing away with that position and creating a police position. Arguably, when taken as isolated incidents, the situations that Plaintiff has experienced may not rise to the level set forth in Depoutot. However, when taken together amidst the plan of the Defendants, such conduct does shock the conscience. Plaintiff submits that it is premature for this Court to rule on this issue. No depositions of the Defendants have been taken up to this point. However, the actions of the Defendants, when looked at in the light most favorable to the Plaintiff, must lead the Court to conclude that Plaintiff has put forth a claim that shocks the conscience.

Defendants also point out to the Court that it is critically important that there be an unavailability of constitutionally-adequate remedies under state law. (See generally **Rumford Pharmacy, Inc. Vs East Providence, 970 F.2d 996 (1st Cir. 1999)** ) in the case at bar, the only available remedy for the Plaintiff is the arbitration process. He has grieved the actions of the Defendants numerous times. In the timeline previously outlined, the Plaintiff has won all of the arbitrations. However, the final arbitration, concluded in 1999 has yet to be decided in the State Superior Court. Clearly there is no adequate remedy available to Plaintiff when a matter remains in a State Court System, with no decision for over five years. The cases referred to by the Defendants as to the adequacy of grievance procedures did not address the lack of action in the Superior Court for the State of Rhode Island. Further, as stated by the Plaintiff in his deposition, all arbitrations are being held in abeyance until the 1999 decision is addressed by the Superior

Court. The Plaintiff would argue that the remedy that the Defendants point to is illusory at best and hasn't remedied the situation that has and continues to occur in the case at bar.

The substantive due process violations address the Defendant Town's actions that, in conjunction with the various Defendants actions have the sole purpose of forcing the Plaintiff from his job. Once again, the Plaintiff has shown facts which could lead a fact finder to find that the actions of the Defendants, coupled with their motive, shocks the conscience. Clearly, the allegations of the Plaintiff taken as a whole are more than violations resulting from bad faith or legal error. In the light most favorable to the Plaintiff, there exists a conspiracy in the Defendant Town of North Providence, wherein various officials, over the past 15 years have attempted to make the Plaintiff's work environment so unbearable that he will quit. Plaintiff asserts that these actions are the type contemplated for redress.

Although the Defendants are quick to point out that there is no identifiable liberty or property interest at stake in the case at bar, Plaintiff respectfully disagrees. Plaintiff has been suspended and lost money due to the actions of the Defendants. To not allow the Plaintiff redress would be to condone the actions by these Defendants.

**D. Plaintiff has Shown Extreme and Outrageous Conduct To Meet Intentional Infliction of Emotional Distress.**

Once again Plaintiff must point to the facts as he has alleged. The facts, in the light most favorable to the Plaintiff, show a concerted effort on the part of the Defendants to make the Plaintiff's work life miserable. Clearly, the facts, if believed would lead someone to exclaim "Outrageous" **(see Generally Restatement (Second) of Torts (1965) sec 46, comment (d).** Defendants picked and chose only those pieces of testimony that singly would not lead one to believe that there was outrageous conduct. Plaintiff asks that this Honorable Court look at the

testimony in total as well as the affidavit to discern that there are questions of fact that a fact finder needs to sift through.

Accordingly, Plaintiff submits that the Court should deny the Defendants' Motion for Summary Judgment on that ground as well.

## V. CONCLUSION

For the reasons cited herein, as well as those that may be raised at hearing, Plaintiff respectfully requests that summary judgment on all counts be denied.

PLAINTIFF,
By His Attorney

Joseph P.Casale, Esquire #3653
438 East Main Road
Middletown, RI 02842
401-841-0004
401-841-0016
Aquidnecklegal@aol.com

## CERTIFICATION

I certify that on the 21 day of December, 2005 I caused to be mailed a copy of the above to Attorney Marc DeSisto, 211 Angell Street, P.O. Box 2563, Providence, RI 02906